UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFERY HUNT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:18-cv-00163-JRS-DLP |
| ) | |
| SAMUEL BYRD, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Jeffrey Hunt alleges that he seriously injured his knee playing basketball in prison on February 11, 2017. The defendants are three members of the prison medical staff and the prison's grievance officer. Mr. Hunt alleges that the four defendants prevented him from receiving proper treatment for his injury for seven months, at which point it was surgically repaired. Mr. Hunt is seeking compensatory and punitive damages from the defendants. *See* dkt. 2 at § VI. Before the Court are the defendants' motions for summary judgment. Dkts. [45], [52], & [56].[1] Mr. Hunt has not responded and the time to do so has passed. The motions are now ripe for review. For the reasons explained in this Order, the defendants are entitled to summary judgment on all of Mr. Hunt's claims.

---

[1] Two of the pending summary judgment motions involve Dr. Chavez. The motion at dkt. 45 seeks summary judgment based on Dr. Chavez's treatment of Mr. Hunt during her employment by Corizon Health, the medical contractor that preceded Wexford of Indiana, LLC. The motion at dkt. 52 concerns Dr. Chavez's treatment of Mr. Hunt while she was employed by Wexford of Indiana, LLC. Because the Court finds that Dr. Chavez was not deliberately indifferent to Mr. Hunt's knee condition at any time, the Court does not separately discuss the two motions.

# I.
# Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# II.
# Factual Background

The consequence of Mr. Hunt's failure to respond to the motion for summary judgment is that he has conceded the defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th

2

Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1(b) ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the standard for assessing a Rule 56(a) motion but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

### A. Defendants

Mary Ann Chavez, D.O. is an osteopathic physician and was licensed by the State of Indiana from 2001 until October 3, 2017. She was employed by Corizon Health from April 26, 2016 until March 31, 2017, as a doctor and then the medical director at Wabash Valley Correctional Facility ("Wabash Valley") in Carlisle, Indiana. On March 31, 2017, the contract between Corizon Health and Indiana Department of Corrections ("IDOC") ended, and she began working for Wexford, which became the new contracted health care provider on April 1, 2017. Dr. Chavez left Wexford on May 9, 2017. She is not currently employed at Wabash Valley. Dkt. 54-1.

Samuel Byrd, M.D. is a physician licensed to practice in the State of Indiana. Dr. Byrd is currently employed as a physician by Wexford at Wabash Valley. He has been employed in this capacity since April 1, 2017. Prior to this time, Dr. Byrd was employed in this capacity by Corizon Health. Dkt. 54-2.

Theresa Littlejohn is an IDOC employee who served as the Grievance Specialist for the facility and received a grievance submitted by the Plaintiff related to his healthcare. Dkt. 57.

Barbara Riggs is a registered nurse licensed to practice in the State of Indiana. Since April 1, 2017, she has been employed as a nurse by Wexford at Wabash Valley. Prior to April 1, 2017, she held this position as an employee of Corizon Health. Dkt. 54-3.

## B. Treatment of Mr. Hunt's Knee

On February 11, 2017, Mr. Hunt was playing basketball when he felt his knee give out. Dkt. 56-1, Hunt Deposition at 22. He submitted an initial healthcare request and was seen by Dr. Byrd a few days later. *Id*. at 25. One to two weeks later Mr. Hunt submitted another healthcare request. On February 23, 2017, Mr. Hunt was evaluated by Dr. Mary Chavez, who ordered x-rays of Mr. Hunt's knee. Dkt. 54-2. On March 17, 2017, Mr. Hunt reported that he was playing basketball again and his right knee gave out. He was given a verbal order for another set of x-rays as well as a 6-month recreational restriction. *Id.*

On March 24, 2017, Dr. Chavez saw Mr. Hunt for a reevaluation of his knee injury. Mr. Hunt reported that something was "catching" in his right knee when he was walking. He walked with a limp and guarded his right knee. On physical exam, his right knee had edema with infrapatellar fluid. He was unable to fully extend his leg at the knee joint. His pain level was at a 7 of 10. Dr. Chavez requested that Orthopedics evaluate Mr. Hunt. Dkt. 54-1; dkt. 54-5 at 68.

On March 28, 2017, Dr. Chavez received an alternative treatment plan advising that Mr. Hunt be given NSAIDS, ice, and rest for one week and to obtain an MRI for him if there was no improvement. *Id.* Dr. Chavez followed up with Mr. Hunt on April 27, 2017, when he reported continued right knee pain. At that time, she submitted a request for Mr. Hunt to receive an MRI of the right knee. Dkt. 54-5 at 77-79. Dr. Chavez resigned employment at Wabash Valley on May 9, 2017. Dkt. 54-1. On or around May 23, 2017, Mr. Hunt received an MRI on his right knee. Dkt. 56-2. During the summer of 2017, Dr. Byrd never saw Mr. Hunt, and was not aware

4

of the results of his MRI. Dkt. 54-2.

Nurse Riggs' responsibilities included the review of written health care requests submitted by inmates. She often assesses inmates initially in the health care unit to triage their needs and, if necessary, schedule them for an evaluation and appointment with an on-site practitioner. Dkt. 54-3. During Ms. Riggs' time as a nurse at the Wabash Valley, she has had opportunities to see and review health care requests submitted by Mr. Hunt.

On May 23, 2017, Nurse Riggs saw Mr. Hunt in the health care unit after he had returned from the Terre Haute Regional Hospital for an MRI on his right knee. Nurse Riggs' assessment of Mr. Hunt on May 23, 2017 was part of standard IDOC procedure, requiring that patients who return from an off-site trip be assessed by medical staff upon their return to the facility. During this assessment, Nurse Riggs noted that a follow-up had been scheduled, pending the results of the MRI. At that time, Mr. Hunt did not have any medical needs and was returned to his housing unit. *Id.*

On July 14, 2017, Nurse Riggs saw Mr. Hunt after he submitted a written health care request stating that he would like to receive crutches to move about the facility. Mr. Hunt was provided a set of crutches pursuant to his request. *Id.*

In August 2017, Dr. Byrd received and reviewed the results of Mr. Hunt's prior MRI, which noted a complete tear of the ACL as well as a radial tear of the medial and lateral meniscus with bone marrow edema and small joint effusion. Dr. Byrd submitted a request for Mr. Hunt to receive an offsite orthopedic evaluation from Dr. Kurt Madsen. Dkt. 54-2. On August 15, 2017, Nurse Riggs completed and submitted paperwork for Mr. Hunt to receive the orthopedic evaluation ordered by Dr. Byrd. Dkt. 54-3. On the same day, Mr. Hunt submitted an informal grievance and healthcare request form asserting that he had heard no information regarding his injured knee and

that he believed he needed to see a surgeon. *Id.*; dkt. 56-4. Nurse Riggs received this request a few days later and reviewed the relevant records. She noted that Mr. Hunt had already been approved for an outside orthopedic consultation.

On September 11, 2017, Dr. Madsen recommended that Mr. Hunt receive ACL repair surgery with meniscal debridement. Pursuant to this recommendation, Dr. Byrd submitted a request for Mr. Hunt to receive this surgery. Dkt. 54-2. On the same day, Nurse Riggs completed an outside consultation request form for Mr. Hunt to receive ACL repair surgery and meniscal debridement. Dkt. 54-3.

On or about October 11, 2017, Mr. Hunt received ACL repair and meniscal debridement surgery. Dkt. 56-9. Upon his return to the prison facility, he was admitted to the institutional infirmary for follow-up care. On November 13, 2017, Mr. Hunt was seen by Dr. Madsen who recommended a new knee brace and physical therapy. On the same day, Dr. Byrd ordered Mr. Hunt's discharge from the infirmary and continued orders for ibuprofen and Tylenol for pain control. Dkt. 54-2. Mr. Hunt still has knee pain to this day, but the pain is better than before surgery. Dkt. 54-4, Hunt Deposition at 51. He has not submitted a health care request since November 2017. *Id.* at 54.

Mr. Hunt testified that Teresa Littlejohn had nothing to do with his medical treatment and that his claim against her is based solely on her delay in responding to his grievance. He does not contend that the grievance delay kept him from receiving medical treatment. To the contrary, he testified that he received the grievance response after his knee surgery. *Id.* at 74-75.

### III.
### Discussion

Mr. Hunt asserts Eighth Amendment medical care claims against the defendants. At all times relevant to Mr. Hunt's claim, he was a convicted offender. Accordingly, his treatment and

the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

The defendants do not dispute that Mr. Hunt's knee condition constitutes a serious medical condition. Instead, they argue that they were not deliberately indifferent to it.

Mr. Hunt agrees that two of the defendants—Dr. Byrd and Teresa Littlejohn—did nothing wrong in relation to the treatment of his knee. Dkt. 54-4, Hunt Deposition at 19-20;74-75. There is no evidence in the record that Dr. Byrd was aware of Mr. Hunt's MRI results or need for an outside consultation until August 2017. Neither is there evidence that Teresa' Littlejohn's delayed response to Mr. Hunt's grievance delayed his medical treatment. Therefore, Dr. Byrd and Ms. Littlejohn are

7

entitled to summary judgment.

The parties dispute whether Dr. Chavez and Nurse Riggs were deliberately indifferent to Mr. Hunt's knee condition. Dr. Chavez's initial request for Mr. Hunt to receive an MRI was denied with instructions to follow up in one week to reassess. But it took four weeks before Mr. Hunt was seen again by Dr. Chavez. To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016), *as amended* (Aug. 25, 2016). Mr. Hunt did not respond to the motion for summary judgment. There is no evidence that Dr. Chavez was responsible for scheduling inmate medical exams or that she provided inadequate pain management during those three weeks. Furthermore, there is no evidence that this three-week delay exacerbated Mr. Hunt's injury. Dr. Chavez is therefore entitled to summary judgment.

Finally, there is no evidence before the Court that Nurse Riggs delayed Mr. Hunt's care or was deliberately indifferent to his knee condition. The record before the Court shows that she promptly processed Dr. Byrd's orders for scheduling Mr. Hunt to be seen by an outside specialist and for his surgery. She provided him crutches when he requested them. She too is entitled to summary judgment.

## IV.
## Conclusion

For the reasons stated above, the defendants' motions for summary judgment, dkt. [45], [52], & [56], are **granted**. Final judgment consistent with this Order shall issue.

**IT IS SO ORDERED.**

Date: August 4, 2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JEFFERY HUNT
247871
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Bryan Findley
INDIANA ATTORNEY GENERAL
bryan.findley@atg.in.gov

Mary L. Graham
BLEEKE DILLON CRANDALL ATTORNEYS
mary@bleekedilloncrandall.com

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov